ELMORE, Judge.
On 19 August 2002, defendant was indicted on charges of felonious possession of a controlled substance and misdemeanor possession of stolen goods. On 7 October 2002, defendant was indicted as an habitual felon. The case was tried at the 27 May 2003 Criminal Session of Guilford County Superior Court.
The evidence presented at the defendant's suppression hearing and trial tended to show the following: On 11 December 2001, Officers Steve Gianella and Scott Gordon of the High Point Police Department were assisting in a narcotics surveillance operation at the Travelodge Express motel in High Point, North Carolina. Officers had information that a particular room at the motel wasinvolved in distributing narcotics. At approximately 9:00 p.m., a 1994 blue Honda Accord drove up to the room, one person got out and entered the room under surveillance, stayed about thirty seconds and then left. Officer Gordon testified that this was consistent with narcotics activity. Officer Gianella was instructed to follow the vehicle and get a tag number. The vehicle drove away at a high rate of speed, and Officer Gianella attempted to catch up. As the Honda made a turn, Officer Gianella noted that the car was far left of center and half the vehicle was in the oncoming lane of traffic. Officer Gianella activated his blue lights and stopped the vehicle.
Officer Gianella approached the vehicle and noted three occupants. He asked the driver, Michael Leach, for his driver's licence, and Leach told him his license had been revoked. Officer Gianella then arrested Leach for driving while license revoked. Once Leach was handcuffed, Officer Gordon, who was providing safety support, asked defendant to step out of the car. Defendant complied, and Officer Gordon asked, before he frisked defendant, if he had any weapons or narcotics on his person. Defendant turned to him and told him he had something in his mouth. Officer Gordon told him to spit it out, and defendant spit out onto the trunk a clear plastic bag with a white object in it. Officer Gordon believed the substance to be crack cocaine, and defendant was placed under arrest.
On 29 May 2003, defendant was convicted of felony possession of cocaine and being an habitual felon and was sentenced to a term of 108 to 139 months imprisonment. Defendant appeals. Defendant first argues that the trial court erred by denying his motion to suppress. Defendant notes that he was removed from the vehicle and frisked after the driver was arrested, and that the traffic stop had ended. Thus, defendant argues that his removal from the car and subsequent search was not for officer safety, and was not for the purposes of searching the vehicle incident to the arrest of the driver.
After careful review of the record, briefs and contentions of the parties, we find no error. "The scope of review on appeal of the denial of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law." State v. Corpening, 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993) (citations omitted).
Here, the trial court found that while conducting narcotics surveillance, police observed a blue Honda Accord pull up to the motel, an occupant of the vehicle went into the room, stayed about thirty seconds, and left. Police followed the vehicle and stopped it when it committed the offense of driving left of center. After the car was stopped, the driver was arrested. Officer Gordon asked defendant to exit the vehicle so it could be searched incident to the driver's arrest. Officer Gordon told defendant he was going to pat him down, and asked him if he had any weapons or drugs. Prior to any frisk, defendant volunteered that he had something in his mouth and spit out the drugs. We find sufficient evidence tosupport these findings of fact.
Based on the evidence and its findings, the trial court properly concluded that the stop of the vehicle was justified because the driver had committed the offense of driving left of center. After the car was stopped, "[a]s a passenger, defendant was obliged to exit the vehicle for safety reasons during the search thereof, despite the absence of probable cause or a reasonable suspicion of criminal activity." State v. Pulliam, 139 N.C. App. 437, 441, 533 S.E.2d 280, 283 (2000).
Once defendant exited the vehicle, and upon being informed that he was subject to a pat-down, he voluntarily spit the drugs out of his mouth. This Court need not address whether there was a reasonable suspicion based on articulable facts under the circumstances that defendant was armed and dangerous to justify the frisk, because he volunteered the drugs before he was frisked. Furthermore, even if he was going to be frisked, his mouth would not have been subject to the frisk, and the drugs would not likely be discovered during a limited, protective pat-down search for weapons. Accordingly, we find no error.
Defendant next argues that the trial court erred by sentencing him as an habitual felon because the offense he was convicted of, possession of cocaine, was a misdemeanor, not a felony. However, defendant's argument fails in light of the North Carolina Supreme Court's decision in State v. Jones, 358 N.C. 473, 598 S.E.2d 125 (2004), that possession of cocaine is a felony. Accordingly, the assignment of error is overruled. We finally consider whether defendant's sentence constituted cruel and unusual punishment. Defendant contends that he was an addict, had serious health problems, and was in possession of only 0.4 grams of crack cocaine, a very small amount. Thus, defendant asserts that his sentence in excess of nine years imprisonment was grossly disproportionate to the offense. We are not persuaded.
N.C. Gen. Stat. §§ 14-7.1 to 7.6 provide that a person who has three prior felony convictions may be sentenced as an habitual felon. Defendant contends that here, however, his sentence as an habitual felon was "grossly disproportionate" to the crime of possessing 0.4 grams of crack cocaine. This Court has stated that "`[o]nly in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment.'" State v. Clifton, 158 N.C. App. 88, 94, 580 S.E.2d 40, 45 (2003)(citations omitted).
We conclude that the facts here "do not meet the standard of an `exceedingly rare' and `extreme' case, in which the `grossly disproportionate' principle would be violated." Id. The sentence in the presumptive range for defendant's conviction of possession of cocaine in violation of N.C. Gen. Stat. § 90-95(d)(2), a Class I felony, without consideration of the Habitual Felon Act, is a minimum of 6 to 8 months to a maximum of 8-10 months, given a prior record level of IV. See N.C. Gen. Stat. § 15A-1340.17. Under the North Carolina Habitual Felon Act, defendant's sentence would be as a Class C felon, and the sentence in the presumptive range fordefendant's convictions would be a minimum of 107 to 133 months to a maximum of 138 to 169 months, given a prior record level of IV. This Court has upheld the sentence of a defendant as an habitual felon where the defendant was convicted of an underlying Class I felony. See State v. Hairston, 137 N.C. App. 352, 528 S.E.2d 29 (2000)(where the underlying felony was felonious breaking and entering a motor vehicle, a Class I felony under N.C. Gen. Stat. § 14-56). Moreover, "when deciding whether a sentence is grossly disproportionate, `we must place on the scales not only [defendant's] current felon[ies], but also his . . . history of felony recidivism.'" Clifton, 158 N.C. App. at 96, 580 S.E.2d at 46 (quoting Ewing v. California, 538 U.S. 11, ___, 155 L. Ed. 2d 108, 122 (2003)). Accordingly, we find no error.
No error.
Judges HUNTER and STEELMAN concur.
Report per Rule 30(e).