IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-158

Filed 15 October 2025

Johnston County, Nos. 22CR000809-500, 22CR052245-500

STATE OF NORTH CAROLINA

v.

DEBRA STANLEY

Appeal by defendant from judgment entered 6 August 2024 by Judge Thomas H. Lock in Johnston County Superior Court. Heard in the Court of Appeals 24 September 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Victor A. Unnone III, for the State.*

*Michelle Abbott, for the defendant-appellant.*

TYSON, Judge.

Deborah Stanley ("Defendant") appeals judgment entered on her 25 July 2024 convictions of possession of a controlled substance on jail premises; possession of methamphetamine; possession of drug paraphernalia; and, attaining Habitual Felon status. Defendant's charge of misdemeanor larceny was dismissed by the trial court at the close of the state's evidence. We discern no error at trial, vacate the conviction and judgment on the lesser-included offense of possession of methamphetamine, and remand for re-sentencing of Defendant on the remaining charges as a prior record

level IV.

## I. Background

Defendant was accused of stealing $71.48 worth of merchandise from a Walmart store in Smithfield on 15 March 2022. Johnston County Sheriff's Deputy Stephen Lambert ("Deputy Lambert") investigated the possible larceny and placed Defendant under arrest. Deputy Lambert searched Defendant and discovered drug paraphernalia and a Xanax prescription located on her person. Defendant was placed inside of Deputy Lambert's patrol car and transported to jail.

While traveling to the jail, Deputy Lambert repeatedly asked Defendant if she had any other drugs or drug paraphernalia in her possession. She responded she did not possess any such items each time he asked. After arriving at the jail, Deputy Lambert located a small glass container in the front floor passenger area where Defendant was sitting. Defendant told Deputy Lambert the container was used to store her Xanax. Deputy Lambert suspected Defendant was being untruthful about having additional drug paraphernalia in her possession. He requested a female deputy to perform a strip search of her.

Sheriff's Lieutenant Jennifer Cook performed the search. A small container, with a crystal-like substance therein, fell out of Defendant's pants upon removal. Defendant attempted to hide the container with her foot and to cover it with her clothes. Defendant admitted the substance inside was methamphetamine. The substance was subsequently sent to the North Carolina State Crime Lab for testing,

which confirmed the presence of methamphetamine.

Defendant was charged with misdemeanor larceny, possession of drug paraphernalia, possession of methamphetamine, possession of a controlled substance on jail premises, and having attained habitual felon status. Defendant was tried before a jury on these charges on 22 July 2024. The misdemeanor larceny charge was dismissed by the trial court at the close of the State's evidence.

Defendant was present when trial proceedings began, but she returned late following a break for lunch on the first day. The trial court warned Defendant the case would proceed in her absence if she was late again. Defendant acknowledged she understood the trial court's warnings, yet she failed to show up to court on time the second day of her trial. The court issued a warrant for Defendant's arrest.

Defendant arrived at court after the conclusion of the state's presentation of evidence and after defense counsel had rested, but prior to the beginning of closing arguments. Defendant informed the court her tardiness was due to being unable to locate supervision for her dog and asserted a disagreement had ensued between Defendant and her roommate. The trial court allowed Defendant the option to re-open her case if she wished to testify. After a lengthy colloquy with the judge and an extended conversation with her attorney, Defendant decided not to testify. Defendant was subsequently offered a plea bargain agreement by the State, which she declined.

Defendant was convicted of possession of methamphetamine, possession of a controlled substance on jail premises, possession of drug paraphernalia, and

attaining habitual felon status. She was sentenced as a prior record level V offender with 14 points to an active term of between 96 months and 128 months of imprisonment. Defendant gave oral notice of appeal in open court and filed written notice of appeal on 9 August 2024.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).

## III.    Issues

Defendant argues four separate issues on appeal: (1) the trial court erred by failing to order a competency hearing *sua sponte*; (2) the trial court erred by conducting the trial in *absentia* without first determining whether Defendant was competent to stand trial; (3) she was improperly sentenced as a prior record level V offender, rather than a level IV; and, (4) the judgment entered for both possession of methamphetamine and possession of a controlled substance on premises of a local confinement facility was improper.

## IV.    Competency Hearing

Defendant argues the trial court erred by failing *sua sponte* to order a competency hearing. Defendant claims substantial evidence existed, which should have triggered the trial court's obligation to inquire as to her capacity to proceed with standing trial under the Due Process Clause of the Fourteenth Amendment. We disagree.

## A. Standard of Review

"The standard of review for alleged violations of constitutional rights is *de novo.*" *State v. Graham,* 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009).

## B. Analysis

"[U]nder the Due Process Clause of the United States Constitution, '[a] criminal defendant may not be tried unless he is competent.'" *State v. Badgett,* 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (quoting *Godinez v. Moran,* 509 U.S. 389, 396, 125 L.E.2d 321, 330 (1993)). A trial tribunal has a constitutional duty to conduct a competency hearing, *sua sponte,* "*if there is substantial evidence before the court indicating that the accused may be mentally incompetent.*" *Badgett,* 361 N.C. at 259, 644 S.E.2d at 221 (emphasis supplied). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Flow,* 384 N.C. 528, 552, 886 S.E.2d 71, 88 (2023).

The determination of whether a defendant's competency is questionable is a "fact-intensive" issue for the trial tribunal and "will hinge on the unique circumstances presented in each case." *State v. Sides*, 376 N.C. 449, 466, 852 S.E.2d 170, 181 (2020). The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez,* 509 U.S. at 396.

There are no "fixed" or "immutable" signs, which invariably indicate the need

for a trial court *sua sponte* to conduct a competency inquiry. *State v. Allen,* 377 N.C. 169, 181, 856 S.E.2d 494, 503 (2021). "The mere existence of evidence tending to show . . . defendant has exhibited certain signs of mental disorder in the past or has engaged in what might be deemed unusual behavior during trial does not necessarily require the trial court to inquire into the defendant's competence . . . ." *Id.* at 182, 856 S.E.2d at 504.

### 1. *Prior drug history and use of prescription medication*

Defendant argues her prior drug use and her current mental health status established a *bona fide* doubt concerning her competency to stand trial. No evidence in the record tends to show Defendant was under the influence of illicit drugs at the time of trial. Any prior history of drug use is immaterial, as competency to stand trial is a temporal inquiry. *See State v. Chukwu,* 230 N.C. App. 553, 564, 749 S.E.2d 910, 918 (2013) (holding a *bona fide* doubt to competency did not exist simply because defendant was previously suffering from a mental state leaving her incompetent to stand trial).

Defendant's statements at trial regarding purported side effects from her mental health medications did not manifestly require further inquiry through a competency hearing. Physical symptoms during trial are insufficient grounds to determine a lack of competence to stand trial, unless such symptoms rise to a level that prevents a defendant from being able to communicate with counsel or to understand the proceeding at hand. *See State v. Bacon,* 326 N.C. 404, 416, 390 S.E.2d

327, 333-34 (1990). Even considering Defendant's reported medicinal side effects, no substantial evidence compelled the court to question her ability to communicate with counsel or understand the trial proceedings. *See Badgett,* 361 N.C. at 259, 644 S.E.2d at 221. In fact, when asked if her medications interfered with her ability to understand the charges and proceedings, Defendant stated, "I don't believe so."

## 2. *Statement about testifying*

Defendant asserts certain statements she made during trial regarding her desire to testify raised a *bona fide* doubt as to her competency to stand trial. When the trial court asked Defendant whether she wanted to testify, Defendant responded her "mental ain't up to it right now." She argues her answer and demeanor was so irrational and bizarre, the trial court should have initiated a formal competency hearing and determination.

None of Defendant's statements called into question her ability to understand the proceeding, to seek and participate with legal counsel, or to make an informed decision on her own behalf. The trial court allowed Defendant to re-open the evidence and gave her the ability to testify after her voluntary absence from the proceedings. The trial court directly addressed Defendant, allowed Defendant to consult with her attorney, permitted Defendant to arrange her personal affairs, and provided her with time to collect herself emotionally prior to deciding whether she would testify. After consulting with her attorney and engaging with the trial judge, Defendant opted not to testify. It is a defendant's right in a criminal trial to choose not to testify. *See*

*State v. Grant*, 293 N.C. App. 457, 458-59, 900 S.E.2d 408, 410 (2024).  The record fails to show Defendant lacked the competence to understand the implications of this informed and knowing decision.

### 3.  *Absence during trial*

Defendant argues her absence and offered explanations, i.e., she was looking for someone to watch her dog and had argued with her roommate, were irrational enough to warrant a *sua sponte* inquiry into her competency.  A defendant may waive her right to be present at trial, but only when she is competent to do so.  *State v. Minyard,* 289 N.C. App. 436, 444, 890 S.E.2d 182, 188 (2023) (citing *Sides,* 376 N.C. at 456, 852 S.E.2d at 175).

If a trial court has substantial evidence a defendant is incompetent, it is obligated to inquire *sua sponte* to determine whether defendant had the requisite capacity to voluntarily waive her right to be present.  *Minyard,* 289 N.C. App. at 444, 890 S.E.2d at 188-89 ("'Once the trial court had *substantial evidence* that [the] defendant may have been incompetent, it should have sua sponte [sic] conducted a competency hearing to determine whether she had the capacity to voluntarily waive her right to be present during the remainder of her trial.'" (quoting *Sides*, 376 N.C. at 457, 852 S.E.2d at 176)).  When there is no indication of incompetence and no observations by the court to prompt such an inquiry, a defendant is free to make the voluntary decision to "absent h[er]self from trial."  *Id*. at 442-44, 890 S.E.2d at 188-89.

On the first day of trial, Defendant was warned the proceeding would continue in her absence if she failed to appear at trial again. Defendant acknowledged she understood the instructions in open court. Defendant's decision not to attend portions of her trial, and her personal reasons for doing so, were within her discretionary right. She was represented by counsel at all times, who was present in court. The trial court was not obligated to determine her competency to make such a decision, given there was no "substantial evidence" tending to show such an inquiry was required. *Id.* at 444, 890 S.E.2d at 188-89.

### 4. *Rejection of Plea Offer*

Defendant contends her decision to decline a plea offer, against the advice of counsel, was evidence of irrational behavior warranting an inquiry into her competency. Defendant argues her decision reflects a lack of comprehension due to repeated requests for probation, despite being informed by the trial court a probationary sentence was not legally available to her.

Despite Defendant's decision to decline the plea offer, against her counsel's advice, no evidence tends to show Defendant did not understand the ramifications of her decision. She displayed an unequivocal understanding of the judicial process by asking questions about her right to appeal and effectuated a conversation with her counsel about the decision. A defendant retains the right to act contrary to the advice of counsel. *See State v. Buchanan,* 330 N.C. 202, 207-08, 410 S.E.2d 832, 835 (1991) (referencing that even "'when counsel and a fully informed criminal defendant client

reach an absolute impasse as to such tactical decisions, the client's wishes must control'" (quoting *State v. Ali*, 329 N.C. 394, 404, 407 S.E.2d 183, 189 (1991)).  No evidence tends to show Defendant lacked capacity to understand and knowingly decline a plea offer against the express advice of counsel.  The decision itself is not sufficient to require the trial court to intervene *sua sponte*.

## V.    Conducting the Trial in *Absentia*

Defendant argues the trial court erred by conducting her trial in *absentia* without first determining whether Defendant was competent to stand trial.  For the reasons above and below, we disagree.

### A. Standard of Review

This court reviews a trial court's decision a defendant knowingly and intentionally waived their constitutional right to be present at trial *de novo*.  *State v. Sides,* 267 N.C. App. 653, 660, 834 S.E.2d 146, 151 (2019).

### B. Analysis

North Carolina criminal courts have a "constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *State v. Hollars,* 376 N.C. 432, 442, 852 S.E.2d 135, 142 (2020) (reinforcing that "'a competency determination is necessary *only* when a court has reason to doubt the defendant's competence'" (emphasis supplied) (quoting *Godinez v. Moran*, 509 U.S. 389, 401 n.13, 125 L.Ed.2d 321 (1993)).  Here, the record is devoid of such evidence as discussed above.  We find

no error in the trial court's decision to continue Defendant's trial in *absentia* after she was warned in open court, with counsel present, acknowledged understanding, and her absence was voluntary.

## VI. Prior Record Level

Defendant argues she should have been sentenced as a prior record level IV offender, rather than a prior record level V, because one of her prior felonies was incorrectly listed as Class G, instead of being designated Class H. The State concedes Defendant's argument and the error.

### A. Standard of Review

The determination of a defendant's prior record level for sentencing purposes is a conclusion of law, *State v. Fraley,* 182 N.C. App. 683, 691, 643 S.E. 2d 39, 44 (2007), which is subject to *de novo* review, *State v. Braswell,* 269 N.C. App. 309, 312, 837 S.E.2d 580, 583 (2020). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams,* 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks omitted). It is not required for "an objection be lodged at the sentencing hearing" for prior record level issues to be reviewable on appeal. *State v. Bohler*, 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009).

### B. Analysis

The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions the court or the jury

find to have been proved in accordance with North Carolina law. N.C. Gen. Stat. § 15A-1340.14(a) (2023). A prior offender with at least ten, but no more than thirteen points is classified as a prior record level IV offender. *See id.* at (c)(4). Additionally, a prior offender with at least fourteen, but no more than seventeen points, is classified as a prior record level V offender. *See id.* at (c)(5).

Generally, any class A1 or Class 1 non-traffic misdemeanor offenses are assigned one point towards the total. *See id.* at (b)(5). Class G convictions are assigned four points towards the total. *See id.* at (b)(3). Class H convictions are assigned two points. *See id.* at (b)(4).

Defendant had been previously convicted of six Class A1 or Class 1 misdemeanors, worth one point each, totaling six points. The trial court also included two Class G felony convictions, worth four points each, totaling eight points. The trial court added those two values, six and eight, and sentenced Defendant as a prior record level V with fourteen points.

Defendant argues, and the State agrees, one of the prior felony convictions denoted as a Class G should have been considered a Class H, which is calculated at two points, and not four. Defendant's Prior Record Level Worksheet improperly classified her conviction for sale of a schedule III controlled substance as a Class G felony and not as a Class H felony. N.C. Gen. Stat. § 90-95(b)(2) (2023). Consequently, Defendant's prior record level points should have totaled twelve, not fourteen, and she should have been sentenced as a prior record level IV offender.

The recalculation of Defendant's prior record level will result in an alteration to the imposed sentence. A new sentencing hearing is appropriate. *See State v. Everette,* 237 N.C. App. 35, 43, 764 S.E.2d 634, 639 (2014). We vacate the judgment and remand to the trial court with instructions to resentence Defendant as a prior record level IV offender after correction of the clerical error in the prior record level calculation.

## VII.   Judgment on Possession of Methamphetamine Charges

Defendant argues the trial court erred by denying her motion to dismiss and by entering judgment against her for possession of a controlled substance on jail premises and possession of methamphetamine, because both counts arose from one continuous act. The State agrees to the error and concedes Defendant's convictions on both counts arose from a single act of possession.

### A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith,* 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). Upon review, this Court should assess whether there is substantial evidence of each essential element of the offense charged, or of a lesser offense included therein. *State v. Fritsch,* 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). A defendant properly preserves all sufficiency of the evidence issues for appellate review "simply by making a motion to dismiss the action at the proper time." *State v. Golder*, 374 N.C. 238, 246, 839 S.E.2d 782, 788 (2020).

## B. Analysis

"It is a universal rule that an indictment must allege all the elements of the of[f]ense charged." *See State v. Riera,* 276 N.C. 361, 368, 172 S.E.2d 535, 540 (1970). "It is also well recognized in North Carolina that when a defendant is indicted for a criminal offense he may be convicted of the charged offense or of a lesser included offense when the greater offense charged in the bill contains all the essential elements of the lesser offense[.]" *Id.* "[I]n order for the State to obtain multiple convictions for possession of a controlled substance, the State must show distinct acts of possession separated in time and space." *State v. Barnes*, 229 N.C. App. 556, 569, 747 S.E.2d 912, 922 (2013).

North Carolina statutes criminalize the illegal possession of a controlled substance. N.C. Gen. Stat. § 90-95(a)(3) (2023). Methamphetamine is classified as a Schedule II controlled substance. N.C. Gen. Stat. § 90-90 (2023). It is a Class H felony to violate § 90-95(a)(3) on the premises of a "penal institution or local confinement facility[.]" N.C. Gen. Stat. § 90-95(e)(9) (2023).

A conviction for committing the offense made punishable by section § 90-95(e)(9) necessarily involves a violation of § 90-95(a)(3). *See id.*; *State v. Barnes,* 229 N.C. App. 556, 568, 747 S.E.2d 912, 922 (2013) ("As we have previously noted, a defendant who has been found guilty of violating N.C. Gen. Stat. § 90-95(e)(9) has necessarily violated N.C. Gen. Stat. § 90-95(a)(3) as well. For that reason, the offense made punishable by N.C. Gen. Stat. § 90-95(a)(3) is a lesser included offense of the

offense made punishable by N.C. Gen. Stat. § 90-95(e)(9).").  A violation of § 90-95(a)(3) should be treated as a lesser-included offense where a violation of both statutes occurs from one continuous act of possession.  *Barnes*, 229 N.C. App. at 568-69, 747 S.E.2d at 922.

Defendant was convicted under § 90-95(a)(3) and § 90-95(e)(9) after methamphetamine was found on her person during a strip search performed by a female deputy at the jail.  Defendant was improperly convicted of both the greater and lesser-included possession offenses. Defendant's possession of methamphetamine occurred in one continuous instance, and no separation of time and space occurred to allow conviction on separate possession offenses.  *Id.* at 569, 747 S.E.2d at 922 ("Moreover, '[i]n order for the State to obtain multiple convictions for possession of a controlled substance, the State must show distinct acts of possession separated in time and space.'" (quoting *State v. Moncree*, 188 N.C. App. 221, 231, 655 S.E.2d 464, 470 (2008)).  Defendant was properly convicted of the greater offense of possession of a controlled substance on the premises of a penal institution.  We vacate and remand to the trial court to arrest judgment on Defendant's conviction on the lesser-included simple possession charge under § 90-95(a)(3) and for resentencing.  N.C. Gen. Stat. § 90-95(a)(3) (2023).

## VIII.  Conclusion

The trial court was under no obligation to order a competency hearing *sua sponte*, based upon the record before us.  The trial court properly conducted

Defendant's trial with her counsel present during her informed and voluntary absence and committed no reversible error.

We vacate Defendant's conviction on the lesser-included possession of a controlled substance charge.  We remand to the trial court for resentencing on the remaining charges as a prior record level IV offender.  *It is so ordered.*

NO ERROR AT TRIAL, JUDGMENT VACATED AND REMANDED FOR RESENTENCING.

Judges CARPENTER and STADING concur.